UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES WISNER,

        Plaintiff,

v.                                    Case No.:  8:11-cv-1283-T-33AEP

GARY LOCKE, Secretary of the
U.S. Department of Commerce,
NATIONAL OCEANIC AND ATMOSPHERIC
ADMINISTRATION, and NATIONAL
MARINE FISHERIES SERVICE,

        Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Federal Defendants' Motion to Dismiss (Doc. # 3), filed on July 29, 2011. Pro se Plaintiff James Wisner filed his Opposition to Defendants' Motion to Dismiss (Doc. # 6) on August 30, 2011. For the reasons that follow, the Court grants the Motion.

**I.   Background and Procedural History**

Wisner filed suit in this Court on June 10, 2011, challenging the June 3, 2011, appointment of Dr. Pamela J. Dana to the Gulf of Mexico Fishery Management Council. (Doc. # 1). Wisner asserts that Dr. Dana's appointment is contrary to the mandates of the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. 1801, *et seq*., which prescribes the requirements for appointments to the Gulf Council. (Id. at 1-2). Wisner further argues that Dr. Dana's appointment

violates the Fourteenth Amendment to the U.S. Constitution. (Id. at 2).

Dr. Dana was appointed to fill an "at-large" seat on the Gulf Council that, Wisner alleges, should have been filled by an individual representing recreational fishermen. (Id. at ¶¶ 16, 40). Dr. Dana is designated as representing "charter fishing" on the list of nominees submitted to Defendants by Florida Governor Rick Scott on March 14, 2011. (Id. at ¶¶ 30, 34, 40). Wisner asserts that Defendants also categorize Dr. Dana as representing charter fishing. (Id. at ¶ 42). As such, Dr. Dana represents commercial interests. (Id. at ¶¶ 62-63).

Wisner argues that the Magnuson-Stevens Act requires that appointments filling open seats on the Gulf Council be made based upon the representative interests of the existing members. (Id. at 2). Florida has three voting seats on the Gulf Council, one of which is held by a member described as "scientific/other" and another held by a member categorized as "commercial." The remaining seat had been held by a member categorized as representing recreational fishing. (Id. at ¶¶ 44-48). Wisner contends that the only way to maintain a "fair and balanced" Council, as required by the Magnuson-Stevens Act, would be to fill the open seat with a nominee representing recreational fishing. (Id. at ¶¶ 25, 52-55).

2

Wisner asserts that Governor Scott's preferred nominee, Eugene Gorham, represents "recreational fishing." (<u>Id.</u> at ¶¶ 31, 37-38). Wisner also alleges that, in all previous appointments, Defendants selected the Governor's nominee based upon the "category" of the open seat. This time, however, Defendants "ignored the legal mandates" of the Magnuson-Stevens Act and selected Dr. Dana for political expediency. (<u>Id.</u> at ¶¶ 56-57).

Wisner describes himself as "first and foremost a recreational fisherman" representing the "fair and legal interests and voice of all 4 million plus recreational fisherman of Florida and its' [sic] multi-billion dollar recreational fishing economy." (<u>Id.</u> at ¶ 1). Wisner argues that he and all other recreational fishermen in Florida "will suffer severe disenfranchisement . . . from not being adequately and fairly represented" by a recreational fisherman on the Gulf Council. (<u>Id.</u> at ¶ 2).

Wisner seeks a declaratory judgment that Defendants violated the Magnuson-Stevens Act and the Administrative Procedure Act (APA), 5 U.S.C. § 551, *et seq.*, and an order blocking the swearing-in of Dr. Dana.[1] (<u>Id.</u> at 22). He also

---

[1] Dr. Dana was sworn in on August 11, 2011.

seeks an order precluding the Secretary of Commerce from appointing anyone other than a nominee representing recreational fishing to fill the Gulf Council seat at issue. (<u>Id.</u>)

Defendants argue in their Motion to Dismiss that Wisner's complaint fails for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. # 3). Specifically, Defendants argue that there is no express or implied right of action to challenge appointments to the Council. Furthermore, Defendants assert that the United States has not waived sovereign immunity to suit with regard to Wisner's claims and that Wisner lacks standing to bring suit in this matter.

In his response to the Motion, Wisner asserts that "[t]here may be no express or implied right of action to challenge appointments to the Council but there is a right to hold the Defendants to the legal mandates" of the Magnuson-Stevens Act -- that is, to ensure a "fair and balanced" Gulf Council "to the extent practicable." (Doc. # 6 at 3). Wisner further argues that Defendants "have no immunity from clearly violating the law. The Secretary has overstepped the authority

4

given to him by Congress and has illegally abused his discretion." (<u>Id.</u> at 4).

Wisner quotes § 702 of the APA, which entitles "a person suffering legal wrong because of agency action" to judicial review of such wrong. (<u>Id.</u> at 10). Wisner asserts that he has "suffered legal wrong because the Secretary has clearly overstepped the authority given to him by Congress." (<u>Id.</u> at 11).

## II.  <u>Standard of Review</u>

Federal courts are courts of limited jurisdiction; in order to establish a claim in federal court, the plaintiff must display complete diversity or raise a question of federal law. The party invoking jurisdiction bears the burden of demonstrating that the matter falls within the court's subject matter jurisdiction. <u>Curry v. High Springs Family Practice & Diagnosis Ctr.</u>, No. 1:08-cv-00008-MP-AK, 2009 WL 3163221, at *2 (N.D. Fla. Sept. 30, 2009).

Motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may attack jurisdiction facially or factually. <u>Morrison v. Amway Corp.</u>, 323 F.3d 920, 924 n.5 (11th Cir. 2003). When the jurisdictional attack is facial, as it is here, the Court looks to the complaint to determine if the

5

"plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal quotations and citations omitted). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion." Id.

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). "A motion to dismiss will be denied unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief." Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990). "In the case of a pro se action, moreover, the court should construe the complaint more liberally than it would formal pleadings drafted by lawyers." Id.

6

However, the Supreme Court has explained that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). A plausible claim for relief must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The Court notes that its analysis is confined to the four corners of the Complaint. The Court may consider the various exhibits attached to the Complaint without converting the Motion to Dismiss into one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).

## III. Gulf of Mexico Fishery Management Council

The Gulf of Mexico Fishery Management Council is one of eight Regional Fishery Councils established by the Magnuson-Stevens Act. 16 U.S.C. § 1852. The purpose of these councils

is "to exercise sound judgment in the stewardship of fishery resources through the preparation, monitoring, and revision" of fishery management plans. 16 U.S.C. § 1801(b)(5). These plans are part of a national program "to prevent overfishing, to rebuild overfished stocks, to insure conservation, to facilitate long-term protection of fish habitats, and to realize the full potential of the Nation's fishery resources." 16 U.S.C. § 1801(a)(6).

The Regional Fishery Councils are composed primarily of individuals from each region's coastal states who represent their respective states' interests and expertise. 16 U.S.C. § 1852(b)(1). The Gulf Council includes members from the States of Texas, Louisiana, Mississippi, Alabama and Florida. 16 U.S.C. § 1852(a)(1)(E).

The Gulf Council has seventeen voting members, eleven of which are appointed by the Secretary of Commerce. Id. The appointees "must be individuals who, by reason of their occupational or other experience, scientific expertise, or training, are knowledgeable regarding the conservation and management, or the commercial or recreational harvest, of the fishery resources of the geographical area concerned." 16 U.S.C. § 1852(b)(2)(A). In making appointments, the Secretary should "to the extent practicable, ensure a fair and balanced

8

apportionment, on a rotating or other basis, of the active participants (or their representatives) in the commercial and recreational fisheries under the jurisdiction of the Council." 16 U.S.C. § 1852(b)(2)(B).

The Secretary selects members from a list of at least three individuals submitted by the Governor of each constituent State. 16 U.S.C. § 1852(b)(2)(C). "The Governor of a State submitting a list of names of individuals for appointment by the Secretary" to the Gulf Council must include: "(I) at least 1 nominee each from the commercial, recreational, and charter fishing sectors; and (II) at least 1 other individual who is knowledgeable regarding the conservation and management of fisheries resources in the jurisdiction fo the Council." 16 U.S.C. § 1852(b)(2)(D)(i).

A Governor must, "to the extent practicable," consult with "representatives of the commercial and recreational fishing interest of the State regarding those individuals." 16 U.S.C. § 1852(b)(2)(C). Each list must include biographical information and an explanation as to how each individual meets membership requirements. <u>Id.</u> The Secretary then reviews the list to determine if the individuals are qualified. <u>Id.</u> Once the Secretary makes an appointment, he or she "shall make a public announcement of such appointment not less than 45 days

9

before the first day on which the individual is to take office as a member of the Council." 16 U.S.C. § 1852(b)(2)(E).

IV.  <u>Analysis</u>

Defendants argue that (1) the United States has not waived sovereign immunity to suit with regard to Wisner's claims and (2) Wisner lacks standing to bring this suit. (Doc. # 3 at 1). As a result, Defendants argue that this action should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (<u>Id.</u>) In addition, Defendants argue that there is no express or implied private right of action permitting a challenge to Council composition. (<u>Id.</u> at 20). As such, Defendants assert that Wisner's claims are subject to dismissal for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (<u>Id.</u>)

Because questions of jurisdiction must be resolved before this Court can properly address substantive claims, the Court will first analyze the effects of Defendants' claim of sovereign immunity and their challenge to Wisner's standing to bring suit in this matter.

A.  <u>Waiver of Sovereign Immunity</u>

The United States is immune from suit absent its consent. <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980). In order

10

to proceed with a claim against the United States, a plaintiff must demonstrate that Congress has unequivocally waived sovereign immunity for the specific action. Id. "[W]hen Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287 (1983). "[T]he terms of [the] waiver, as set forth expressly and specifically by Congress, define the parameters of a federal court's subject matter jurisdiction to entertain suits brought against it." Ware v. United States, 626 F.2d 1278, 1286 (5th Cir. 1980).

Wisner asserts a number of grounds for this Court's jurisdiction over this action. First, Wisner argues that Defendants' actions are subject to judicial review under two sections of the Magnuson-Stevens Act: 16 U.S.C. § 1855 and § 1861(d). However, neither waiver of sovereign immunity within the Magnuson-Stevens Act covers the specific cause of action brought by Wisner.

Section 1855(f) of the Magnuson-Stevens Act provides that the promulgation and implementation of regulations under fishery management plans are subject to judicial review under the APA:

> (1) Regulations promulgated by the Secretary under
> this chapter and actions described in paragraph (2)
> shall be subject to judicial review to the extent
> authorized by, and in accordance with, chapter 7 of
> Title 5, if a petition for such review is filed
> within 30 days after the date on which the
> regulations are promulgated or the action is
> published in the Federal Register, as applicable;
> except that --
>> (A) section 705 of such Title is not
>> applicable, and
>> (B) the appropriate court shall only set aside
>> any such regulation or action on a ground
>> specified in section 706(2)(A), (B), (C), or
>> (D) of such Title.
> (2) The actions referred to in paragraph (1) are
> actions that are taken by the Secretary under
> regulations which implement a fishery management
> plan, including but not limited to actions that
> establish the date of closure of a fishery to
> commercial or recreational fishing.

16 U.S.C. § 1855(f). Section 1855(f) does not refer to fishery

management council appointments, and "a waiver of sovereign

immunity cannot be implied but must be unequivocally

expressed." Mitchell, 445 U.S. at 538 (citations and internal

quotation marks omitted). Furthermore, council appointments do

not involve the promulgation or implementation of regulations.

See Delta Commercial Fisheries Ass'n v. Gulf of Mex. Fishery

Mgmt. Council, 259 F. Supp. 2d 511, 515 (E.D. La. 2003),

aff'd, 364 F.3d 269 (5th Cir. 2004). ("The composition of the

Fishery Management Council is . . . not a regulation

promulgated by the Secretary or the implementation of such a

regulation. Therefore, challenge to the composition of the

Fishery Management Council is not provided for in the Magnuson-Stevens Act.") Thus, the Court finds that § 1855(f) does not waive sovereign immunity with respect to Wisner's claims.

Section 1861(d) states more broadly that "[t]he District courts of the United States shall have exclusive jurisdiction over any case or controversy arising under the provisions of this chapter." "Courts, however, reading the statute as a whole, have recognized that review under the terms of § 1861(d) has been generally restricted to direct enforcement actions, usually involving the seizure and condemnation of vessels." Kramer v. Mosbacher, 878 F.2d 134, 136 (4th Cir. 1989). Section 1861(j)(1) explains that this provision applies to fishing regulations and permits and authorization of foreign fishing under any international fishery agreement. Because this case does not involve an enforcement action or fishing regulations or permits, § 1861(d) does not waive sovereign immunity with respect to Wisner's claims. Delta Commercial Fisheries Ass'n, 259 F. Supp. 2d at 516.

Wisner asserts that Delta is distinguishable from the instant matter because the plaintiffs in that case were "challenging the total makeup" of the Council and not Defendants' latitude in filling one particular seat. (Doc. #

13

1 at ¶ 77). However, the Court agrees with Defendants that <u>Delta</u> is "directly on point" and any factual nuance is "a distinction without a difference." (Doc. # 3 at 11). The Magnuson-Stevens Act simply does not waive sovereign immunity with regard to Wisner's claims.

Wisner also asserts jurisdiction pursuant to the APA, which waives sovereign immunity in certain circumstances to allow equitable relief from agency action. 5 U.S.C. § 702. As Wisner notes, § 702 provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." However, judicial review is not permitted if (1) the statute "precludes judicial review" or (2) the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

The Supreme Court discussed § 701(a) in <u>Heckler v. Chaney</u>, 470 U.S. 821 (1985). The Court noted that § 701(a)(1) applies "when Congress has expressed an intent to preclude judicial review," while § 701(a)(2) applies if judicial review is not affirmatively precluded but "the statute is drawn such that a court would have no meaningful standard against which to judge the agency's exercise of discretion." <u>Id.</u> at 830. Section 701(a)(2) applies here.

As noted above, the appointment of members to the Gulf Council is governed by 16 U.S.C. § 1852. That statute does not allot any number of seats to commercial, recreational or other interests, or require that the Secretary appoint Council members based upon the members' representative interests. It only requires that the Secretary, "to the extent practicable, ensure a fair and balanced apportionment, on a rotating or other basis, of the active participants (or their representatives) in the commercial and recreational fisheries under the jurisdiction of the Council." 16 U.S.C. § 1852(b)(2)(B). This ambiguous language evinces Congress' will to give the Secretary latitude in making individual appointments. The Court thus finds that the language of the statute commits the makeup of the Gulf Council to agency discretion and precludes judicial review.

Defendants' other arguments are also well taken. Defendants note that nominees are not required to represent a particular interest in order to be qualified to serve on the Gulf Council. Nominees must simply be "knowledgeable regarding the conservation and management, or the commercial or recreational harvest, of the fishery resources of the geographical area concerned" and "active participants (or their representatives) in the commercial and recreational

15

fisheries under the jurisdiction of the Council." 16 U.S.C. § 1852(b)(2). Furthermore, the statute does not require the Secretary to select a governor's preferred candidate, and he or she could elect to appoint a representative of recreational fishing on a "rotating or other basis."

In his response to the Motion, Wisner argues that appointments are "committed to the Secretary's discretion but the Secretary's discretion must be within the 'fair and balanced' mandates" of the Magnuson-Stevens Act. (Doc. # 6 at 12). Wisner insists that § 1852 requires the Secretary to meet Wisner's definition of "fair and balanced" -- that is, to appoint Gulf Council members according to their representative interests compared to the interests of the remaining seats. A careful reading of the statute reveals no such mandate, however. Section 1852 does require the Governor to include at least one nominee each from the commercial, recreational and charter fishing sectors but similar language is conspicuously absent with regard to the Secretary's appointments. The Secretary is merely required to select from the Governor's list and ensure a fair and balanced Council "to the extent practicable." 16 U.S.C. § 1852(b)(2). Simply put, Congress left appointments to the Secretary's discretion, and 5 U.S.C. § 701(a)(2) precludes this Court's review.

Wisner also asserts this Court's jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. § 1346. However, "while 28 U.S.C. § 1331 governs federal question jurisdiction, that provision . . . does not of itself waive the United States' immunity." <u>Orange Ridge, Inc. v. State of Fla.</u>, 696 F. Supp. 600, 604 (S.D. Fla. 1988). The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." <u>Skelly Oil Co. v. Phillips Petroleum Co.</u>, 339 U.S. 667, 671 (1950).

Finally, the Mandamus Act, 28 U.S.C. § 1346, is an "extraordinary remedy" that "is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy [is] available." <u>Cash v. Barnhart</u>, 327 F.3d 1252, 1257 (11th Cir. 2003) (citations and internal quotation marks omitted). Because Defendants have no clear duty to appoint any particular individual to the Gulf Council, mandamus relief is inapplicable in this case. Thus, the Court finds Wisner's remaining jurisdictional avenues unavailing.

The Court finds that the United States has not waived sovereign immunity with regard to appointments to the Gulf of Mexico Fishery Management Council. Because the United States

17

has not waived sovereign immunity as to Wisner's claims, the Court does not have subject matter jurisdiction.

**B.**  <u>**Standing**</u>

In order to have standing to bring suit, a plaintiff "must have suffered an injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). The Supreme Court explained that "particularized" means that "the injury must affect the plaintiff in a personal and individual way." <u>Id.</u> at 560 n.1. In addition, "there must be a causal connection between the injury and the conduct complained of." <u>Id.</u> at 560. Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Id.</u> at 561. (citations and internal quotation marks omitted).

Wisner does not allege any injury caused by Dr. Dana's appointment; indeed, Dr. Dana had not yet been sworn in when the Complaint was filed. He only asserts that he and four million other recreational fishermen in Florida will be disenfranchised by the lack of a recreational fishing representative on the Council. (Doc. # 1 at ¶¶ 1-3). Such

18

generalized allegations cannot be categorized as "concrete and particularized." In <u>Delta</u>, the Eleventh Circuit found that the plaintiff alleged "deviation from the statutory requirement that the Council be 'fair and balanced.' . . . But the only interest injured by deviating from this mandate is [plaintiff's] generalized interest in proper application of the law. Frustration of such an interest is not by itself an injury in fact for purposes of standing." 364 F.3d at 272-73. The inclusion of all Florida recreational fishermen within the wide net of Wisner's claimed injury adds nothing to support standing. <u>See</u> <u>Valley Forge Christian Coll. v. Americans United for the Separation of Church & State</u>, 454 U.S. 464, 474 (1982) (noting that a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

Furthermore, any alleged injury is neither actual nor imminent. Again, Dr. Dana had not yet been sworn in when Wisner filed his Complaint, so there could have been no actual injury at that time. Any alleged future injury is purely conjectural. As Defendants point out, it is impossible to predict how the makeup of the Gulf Council might affect voting patterns, and to presume bias is offensive to the trust and independence afforded each member.

19

Based upon the foregoing analysis, the Court finds that Wisner has not established injury in fact. As the Eleventh Circuit noted in <u>Delta</u>, "A plaintiff's failure to establish one of the three elements of Article III standing deprives federal courts of jurisdiction to hear the plaintiff's suit." 364 F.3d at 273. Thus, it is unnecessary to analyze the remaining elements of standing. The Court finds that Wisner lacks standing and, as a consequence, this Court lacks jurisdiction in this case.

## V.   <u>Conclusion</u>

The Court finds that it does not have subject matter jurisdiction in this case because the United States has not waived sovereign immunity with regard to Wisner's claims and because Wisner lacks standing to bring suit. Therefore, the Court need not address the substance of Wisner's claims. This case is dismissed with prejudice for lack of subject matter jurisdiction.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Federal Defendants' Motion to Dismiss (Doc. # 3) is **GRANTED**.

(2)   This case is **DISMISSED** with prejudice. The Clerk is directed to **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>2nd</u>

day of December 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel and Parties of Record

21